# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CRIMINAL NO. 08-00100-CB |
| | | CIVIL NO. 09-00845-CB |
| KENNETH MAURICE JOHNSON, | ) | |
| Petitioner/Defendant. | ) | |

## ORDER

This matter is before the Court on a motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 by Petitioner Kenneth Maurice Johnson, a person in federal custody. (Doc. 57.) The government has filed a response to Petitioner's motion (Doc. 61) and Petitioner has filed a reply brief.[1] (Doc. 64.) For the reasons set forth below, the motion is due to be denied without an evidentiary hearing.

**Factual & Procedural Background[2]**

Kenneth Maurice Johnson was charged in a superseding indictment with conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846 (Count One), possession of a handgun after have previously been convicted of a felony in violation of 18 U.S.C. §922(g)(Count Two) , using, carrying or possessing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Three), and

---

[1] Also pending is Petitioner's motion for leave to amend (Doc. 65) which seeks merely to add exhibits. That motion is **granted**.

[2] On February 9, 2009, the Court held a pre-sentencing hearing on Johnson's motion to withdraw his guilty plea. (Mot. Hearing & Sent. Tr., Doc. 52) Although Johnson continues to dispute some of the evidence presented by the government at that hearing, the Court found the government's evidence—specifically the testimony of Johnson's former attorney—to be credible. In other words, any factual disputes have already been resolved in the government's favor. *See infra* at 5.

possession with intent to distribute 5 ounces of cocaine in violation of 21 U.S.C. § 841 (Count Four). Johnson retained attorney Dennis Knizley to represent him. Knizley prepared Johnson's case for trial, a jury was struck at the beginning of the June 2008 trial term, and trial was to begin approximately two weeks later.

Before and after jury selection, Knizley and Johnson discussed trial strategy. Of particular concern were the firearms and conspiracy counts. The § 924(c) count carried a five-year mandatory consecutive sentence, and the conspiracy count carried a ten-year minimum due to (1) the amount of cocaine charged (more than 500 grams) and (2) the enhanced penalty resulting from Johnson's prior drug conviction. Johnson initially told Knizley that his wife and father-in-law would testify that the firearms were not his. As for the conspiracy count, the defense would be that Johnson merely purchased cocaine for his personal use; therefore, there was no intent to distribute and no conspiracy. During the interim between jury selection and trial, the defense was forced to reconsider its strategy. First, Johnson's wife and father-in-law decided not to testify, so Knizley had no defense to the gun charges. Second, the government produced an audio tape it intended to use as Rule 404(b) evidence. On that tape, Johnson arranges a drug buy from Hill, the government's cooperating witness. In addition, the government produced telephone records showing more than 70 telephone contacts between Johnson and Hill. Knizley considered the audio tape, particularly Johnson's level of comfort talking to Hill, and the numerous contacts between the Johnson and Hill to be a serious problem for the proposed buyer-seller defense. Knizley confronted Johnson with his concerns and the real possibility that Johnson would face a 15-year minimum if they tried the case and lost. Because of this, Johnson and Knizley decided that it was "imperative" to negotiate a plea

agreement. The defense strategy for the plea agreement was to obtain a plea to a 10-year minimum and use substantial assistance to obtain a downward departure below the minimum.

On Friday June 13, 2008, the defense filed a written plea agreement, signed by both Johnson and his attorney. Johnson agreed to plead guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine (Count One) and to the felon-in-possession charge (Count Two) and in exchange for Johnson's full, complete and truthful cooperation, the government agreed to dismiss the § 924(c) count (Count Three), with its five-year mandatory minimum, along with the possession count (Count Four). The government also agreed to file a § 5K1.1 motion for downward departure at sentencing if the government, in its discretion, determined that Petitioner's cooperation amounted to substantial assistance. If no downward departure motion was filed, the government agreed to recommend a sentence at the low end of the Sentencing Guideline range. As part of the plea agreement, Johnson signed a three-page Factual Resume which outlined the elements of the offense and set forth the offense conduct underlying the charges. Johnson agreed that the government could prove that over a two to three year period immediately prior to March 2008 Travis Bernard Hill purchased "four and a half ounce quantities of cocaine at a time" from Johnson." (Factual Resume, Doc. 27, 2.) Johnson also admitted that law enforcement recovered five ounces of cocaine from his vehicle at the time of his arrest. On the same date, officers executed a search warrant on Johnson's home and recovered one and one-half ounces of cocaine from his house, along with a firearm. (*Id.* 2-3.) The factual resume concludes with the admission that "the United States could prove [Johnson's] involvement beyond a reasonable doubt with a kilogram of cocaine." (*Id.* 3.)

On Monday, June 16, 2008, Johnson entered a guilty plea to Counts One and Two.[3] During the plea colloquy, the Court established that Johnson had not been pressured or coerced into entering the plea. (Guilty Plea Hearing Tr., Doc. 41, 8.) Johnson acknowledged that he understood that he would give up certain constitutional rights by pleading guilty (e.g., the right to confront witnesses, the right to a jury trial, etc.) (*id.* at 18-21) and that he would lose certain civil rights as the result of a conviction (*id.* 8). The Court informed Johnson that it was not bound by the plea agreement (*id.* 7) and also instructed him as to the elements of the offense, the minimum and maximum sentences he faced upon conviction (*id.* 10) and the effect of his limited appeal waiver (*id.* 16). Before entering his guilty plea, Johnson affirmed the truth of the statements contained in the Factual Resume. (*Id.* 22.) The Court accepted the guilty plea--finding that Johnson was competent to enter the plea, that the plea was knowing and intelligently entered, and that it was factually supported. (*Id.* 28.) Sentencing was set for December 15, 2008.

Shortly before the sentencing date Mr. Knizley, Johnson's attorney, filed a motion to continue the sentencing. In the motion, counsel sought additional time for his client to attempt to provide substantial assistance because the government was not satisfied with the assistance provided thus far. The Court granted the motion and continued the sentencing to January 20, 2009. In a letter dated December 15, 2008 Johnson informed the Court that he had fired Mr. Knizley and wished to withdraw his guilty plea. He also requested a court-appointed attorney. Mr. Knizley subsequently filed a motion to withdraw. When the parties appeared before the Court on January 20, 2008, the Court granted Knizley's motion to withdraw, appointed the

---

[3] In exchange for Johnson's guilty plea, the government recommended dismissal of Counts Three and Four.

Office of the Federal Public Defender to represent Johnson, and continued the sentencing hearing. On February 2, 2009, attorney Peter Madden filed a motion to withdraw the guilty plea on Johnson's behalf. The motion alleged that Knizley had failed to advise Johnson that the amount of cocaine involved in the offense would affect the minimum term of imprisonment. According to the motion, Knizley advised that the mandatory minimum was, in effect, unimportant because it would be avoided by the government's § 5K1.1 downward departure.

On February 9, 2009, the Court held a hearing on the motion. Both Knizley and Johnson testified at the hearing. Knizley testified that he and Johnson had "discussed the penalties of the drug count under 500 grams and over 500 grams . . . [and that] [o]ne of the goals in trying the case . . . was to get under the 500 grams if at all possible so that the would avoid the minimum mandatory." (Mot. Hearing Tr., Doc. 52, 47.) Knizley also testified that he had gone over every aspect of the plea agreement with Johnson on the Friday prior to the Monday guilty plea. Knizley specifically explained "that [the] penalty was 10 to life because of [Johnson's] prior felony and that that was doubled from the five to 40 because of the quantity of the drugs." (*Id.* 57.) At the conclusion of the hearing, the Court rejected Johnson's claims, stating:

> I do not accept the fact that the defendant simply came before me with Mr. Knizley having told him to simply agree with everything the judge tells you and then we'll talk about this later.
>
> I find that the defendant had an understanding of the plea agreement by the acknowledgment of the signing of it, the dating of it on the Friday before the plea , and Mr. Knizley's testimony, which I accept as being the more credible testimony about having explained the options and the consequences and the sentencing factors that would have come into play and that the reasons stated in your motion for the defendant to withdraw his plea do not or are not, rather are not supported by the evidence and that Mr. Knizley's advice to the defendant was knowingly and willfully and intelligently followed by the defendant.
>
> And the phrase I was going to use a moment ago is buyer's remorse. you know, and I don't throw that out frivolously, but it just seems that the defendant was hoping that he was going to get a departure. And he didn't get it.

5

> . . . So he's here facing, without the motion, . . . that 10-year sentence.
>
> [T]hat's the Court's ruling. The motion to withdraw the guilty plea is denied.

(*Id.* 82-83.)

The Court sentenced Johnson to a total term of imprisonment of 120 months. Johnson appealed, raising two issues--the denial of the motion to withdraw his guilty plea and the term of supervised release for the firearm offense. As to the first issue, "Johnson argue[d] that his plea colloquy was insufficient because neither the court or counsel told Johnson that the government had to prove he had distributed 500 grams or more of cocaine for Johnson to be subject to the mandatory minimum sentence of ten years." *United States v. Johnson*, 09-11136-FF, slip op. at 7 (11th Cir. Nov. 6, 2009). The Eleventh Circuit rejected this argument noting that "[t]he record supports the finding that Johnson knew that his sentence could be enhanced for involving more than 500 grams of cocaine." *Id.* at 8. The appellate court also rejected Johnson's objection to the supervised release term. Both the conviction and sentence were affirmed by mandate issued November 6, 2009. The mandate did, however, direct this Court to correct a clerical error, i.e., to correct the judgment to reflect a sentence of 70 months on the firearms count.[4] The judgment was amended as directed. (Doc. 60.) Johnson filed the instant motion on or about December 16, 2009.

**Legal Analysis**

    *Standard of Review*

---

[4] The original judgment incorrectly stated that Johnson was sentenced to 120 months on each count, to run concurrently. The oral pronouncement of judgment was 120 months as to Count One and 70 months as to Count Two, to run concurrently.

6

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id*. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). One way a petitioner may overcome a procedural default of claims not raised on direct appeal is by attributing the failure to raise those claims to constitutionally ineffective assistance of counsel. *Cross*, 893 F.2d at 1290.

To establish that counsel's performance was so deficient as to violate petitioner's right to counsel guaranteed by the Sixth Amendment, petitioner "must show both incompetence and prejudice: (1) [P]etitioner must show that counsel's representation fell below an objective standard of reasonableness and (2) [P]etitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc) (internal quotations and citations omitted). Evaluation of the first prong of an ineffective assistance claim, the reasonableness of counsel's performance, is guided by the principles set forth by the Eleventh Circuit in *Chandler*. First, the standard is *reasonableness* under the prevailing norms of the legal profession. *Id.* at 1313. The question is not whether counsel did what was possible, or even what was prudent but whether he did what was "constitutionally compelled." *Id*.

Even when an attorney is shown to have performed unreasonably in his representation of a defendant, it is just as likely as not that his error was harmless. *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001). Therefore, a petitioner has a difficult burden to prove the prejudice prong of his ineffective assistance of counsel claims. *Id.* As noted, prejudice requires proof that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland v. Washington,* 466 U.S. at 694). A petitioner who has pled guilty can succeed on an ineffective assistance of counsel claim only if "counsel's [allegedly] constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

An evidentiary hearing is required with respect to petitioner's §2255 claims "unless the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief." 28 U.S.C. § 2255. "Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition." *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984). No hearing is required where

petitioner has asserted claims that are patently frivolous, claims that amount to nothing more than unsupported generalizations or claims that are affirmatively contradicted by the record. *Id.* Put differently, to obtain a hearing a Petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States,* 291 F.3d 708, 715 n. 6 (11th Cir. 2002).

*Petitioner's Claims*

Johnson raises various ineffective assistance of counsel claims in his § 2255 motion. He asserts that counsel rendered constitutionally ineffective assistance at the guilty plea by improperly advising him about the mandatory minimum sentence, by advising him to plead guilty to a drug quantity the government could not prove, and for failing to pursue a viable defense to the conspiracy count.[5] First, Johnson contends that Knizley did not understand the effect of the drug amount on the minimum mandatory sentence and, therefore, improperly advised him about the sentence he was facing. Johnson raised an identical issue in his motion to withdraw the guilty plea. The Court rejected it, finding that Knizley correctly advised Johnson regarding this matter. Consequently, the factual basis for this claim, i.e., that counsel incorrectly advised him, is affirmatively contradicted by the record.[6]

---

[5] In his form motion Petitioner purports to raise a second claim. He asserts simply that "[d]efendant was sentenced to 70 months for the charge of 18 U.S.C. § 922(g)(1)." ( Pet., Doc. 57, 6.) That is not a claim; it is merely a statement of fact.

[6] Even if Johnson had received erroneous advice about the minimum sentence on the conspiracy count, he could not prevail on his ineffective assistance claim because he was not prejudiced. Due to his prior drug conviction, the enhanced minimum sentence for less than 500 grams would have been five years. So if Johnson had gone to trial on *all* counts merely to challenge the drug quantity, he would have faced a minimum 10-year sentence (5 years on the drug counts plus a mandatory *consecutive* sentence on the § 924(c) count). At least with the negotiated plea, Johnson had the possibility of a § 5K1.1 sentence reduction below the 10-year statutory minimum. Because Johnson could not have done better overall if he had challenged the drug amount at trial, he cannot persuade the Court that he would not have pled guilty and would
(Continued)

Johnson's second ineffective assistance claim is that Knizley advised him to plead guilty to a drug amount that the government could not prove. Why Johnson believes the government could not prove this amount is not clear. If his argument is that only the drugs actually found in his car and in his house (totaling 6.5 ounces or 184 grams) can be counted toward the drug amount, his premise is wrong. A jury may base its drug quantity finding on evidence, including witness testimony, of multiple repeated transactions. *See United States v. Atencio*, 435 U.S. 1222, 1232 (11th Cir. 2006) (drug quantity evidence sufficient where jury extrapolated based evidence regarding number of transactions and amounts involved per transaction); *cf. United States v. Young*, 39 F.3d 1561, 1573 (11th Cir. 1984) (upholding court's drug quantity finding at sentence based on extrapolation from other evidence). If his argument is that there was no other drug quantity evidence, that is contradicted by the record.[7] Johnson's claim that Knizley rendered faulty advice on this issue is without merit.

Finally, Johnson asserts that Knizley rendered ineffective assistance because he failed to pursue a defense to the conspiracy charge. Because Johnson pled guilty and did not go to trial, the Court construes this claim to be an attack on the voluntariness of his plea. *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985). Johnson does not assert, and cannot prove, any prejudice arising from counsel's alleged error. The error, according to Johnson, is counsel's failure to realize (and advise Johnson) that there was no conspiracy because one cannot conspire

---

have gone to trial if only he had been correctly informed. *See Hill*, 474 U.S. at 59 (in guilty plea context key to prejudice inquiry is whether evidence would have changed the outcome at trial).

[7] Johnson admitted in the plea agreement that the government could prove his involvement with more than 500 grams of cocaine.

with a government agent. Counsel's alleged error does not render the guilty plea involuntary for two reasons. First, the decision to plead guilty involved more than simply an evaluation of Johnson's chances of an acquittal on the conspiracy count. There were other charges (for which no defense has been proffered) and mandatory minimum sentences to consider.[8] Based on the record in this case, it is inconceivable that Johnson would have left a plea agreement on the table and gone to trial with a defense to only one of the four charges against him. Second, the defense—that Travis Bernard Hill was a government agent and, therefore, cannot be a coconspirator—is only a partial one. While it is true that "a person cannot conspire with a government informer who secretly intends to frustrate the purpose of the conspiracy," *United States v. Lively*, 803 F.3d 1124, 1126 (11th Cir. 1986), it appears that Hill became a government informant for only a few days at the end of the conspiracy's three-year time frame.[9] If it existed at all, Johnson's defense applied only to the portion of the conspiracy that occurred after Hill became an informant. Knizley's failure to explain to Johnson this rather minute point was neither unreasonable nor prejudicial.

**Conclusion**

For the reasons set forth above, the motion to vacate, set aside or correct sentence is due to be and hereby is **DENIED**.

*Certificate of Appealability Denied*

---

[8] *See* discussion n. 6, *supra*.

[9] The charged conspiracy was from March 3, 2005 until March 5, 2008. The Factual Resume states that "[i]n March of 2008, Travis Bernard Hill advised Mobile Police Officers that he had purchased cocaine from JOHNSON for the past two to three years, purchasing four and one half quantities of cocaine at a time." Hill's first contact as an undercover informant occurred on March 3, 2008.

11

Rule 11 of the Rules Governing Section 2255 Proceedings requires that this Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may be issued only where the applicant has made a 'substantial showing of the denial of a constitutional right.'" Hardwick v. Singletary, 126 F.3d 1312, 1313 (11th Cir. 1997). This standard is "materially identical" to the standard governing certificates of probable cause under the former 28 U.S.C. § 2253. Id.; accord Slack v. McDaniel, 579 U.S. 473 (2000). In the context of certificates of probable cause, the Supreme Court has defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason. Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983). None of the claims raised in petitioner's § 2255 meet this threshold. Accordingly, the certificate of appealability is **DENIED**.

**DONE** and **ORDERED** this the 20th day of September, 2011.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**
